UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HENRY VASQUEZ,<br>CDCR #C-81129,<br><br>         Plaintiff,<br><br>vs.<br><br>DANIEL PARAMO, Warden;<br>AGUIRRE, Correctional Lieutenant;<br>A. GONZALEZ, Correctional Sergeant;<br>N. UHDE, Correctional Officer;<br>R. HERRERA, Correctional Officer;<br>R. CERVANTES, Correctional Officer;<br>R. JANSEN, Correctional Officer,<br>         Defendants. | Case No.: 3:18-cv-02097-GPC-MDD<br><br>**ORDER:**<br><br>**1) GRANTING MOTION TO PROCEED IN FORMA PAUPERIS [ECF No. 2]**<br><br>**AND**<br><br>**2) DIRECTING U.S. MARSHAL TO EFFECT SERVICE OF COMPLAINT AND SUMMONS PURSUANT TO 28 U.S.C. § 1915(d) AND Fed. R. Civ. P. 4(c)(3)** |

  HENRY VASQUEZ ("Plaintiff"), currently incarcerated at Richard J. Donovan Correctional Facility ("RJD"), in San Diego, California, filed a Complaint pursuant to the Civil Rights Act, 42 U.S.C. § 1983, on September 8, 2018, together with a Motion to Proceed In Forma Pauperis ("IFP") pursuant to 28 U.S.C. § 1915(a).

  Plaintiff claims RJD's Warden, a Correctional Lieutenant, Sergeant, and several Correctional Officers violated his First and Eighth Amendment rights either by using excessive force against him, or failing to intervene while he was beaten on May 7, 2018,

after he threatened to file an inmate appeal. (*See* Compl., ECF No. 1 at 4-8.) He seeks injunctive relief as well as $250,000 in damages. (*Id.* at 15.)

## I. Motion to Proceed IFP

All parties instituting any civil action, suit or proceeding in a district court of the United States, except an application for writ of habeas corpus, must pay a filing fee of $400.[1] *See* 28 U.S.C. § 1914(a). The action may proceed despite a plaintiff's failure to prepay the entire fee only if he is granted leave to proceed IFP pursuant to 28 U.S.C. § 1915(a). *See Andrews v. Cervantes*, 493 F.3d 1047, 1051 (9th Cir. 2007); *Rodriguez v. Cook*, 169 F.3d 1176, 1177 (9th Cir. 1999). However, a prisoner who is granted leave to proceed IFP remains obligated to pay the entire fee in "increments" or "installments," *Bruce v. Samuels*, __ U.S. __, 136 S. Ct. 627, 629 (2016); *Williams v. Paramo*, 775 F.3d 1182, 1185 (9th Cir. 2015), and regardless of whether his action is ultimately dismissed. *See* 28 U.S.C. § 1915(b)(1) & (2); *Taylor v. Delatoore*, 281 F.3d 844, 847 (9th Cir. 2002).

Section 1915(a)(2) requires prisoners seeking leave to proceed IFP to submit a "certified copy of the trust fund account statement (or institutional equivalent) for ... the 6-month period immediately preceding the filing of the complaint." 28 U.S.C. § 1915(a)(2); *Andrews v. King*, 398 F.3d 1113, 1119 (9th Cir. 2005). From the certified trust account statement, the Court assesses an initial payment of 20% of (a) the average monthly deposits in the account for the past six months, or (b) the average monthly balance in the account for the past six months, whichever is greater, unless the prisoner has no assets. *See* 28 U.S.C. § 1915(b)(1); 28 U.S.C. § 1915(b)(4). The institution having custody of the prisoner then collects subsequent payments, assessed at 20% of the preceding month's income, in any month in which his account exceeds $10, and forwards those payments to the Court

---

[1] In addition to the $350 statutory fee, civil litigants must pay an additional administrative fee of $50. *See* 28 U.S.C. § 1914(a) (Judicial Conference Schedule of Fees, District Court Misc. Fee Schedule, § 14 (eff. Dec. 1, 2016). The additional $50 administrative fee does not apply to persons granted leave to proceed IFP. *Id.*

2

until the entire filing fee is paid. *See* 28 U.S.C. § 1915(b)(2); *Bruce*, 136 S. Ct. at 629.

In support of his IFP Motion, Plaintiff has submitted a Prison Certificate issued by an Accounting Officer Specialist at RJD, as well as copies of his CDCR Inmate Statement Report attesting to his trust account activity and balances for the 6-month period preceding the filing of his Complaint. *See* ECF No. 3 at 1-3; 28 U.S.C. § 1915(a)(2); S.D. Cal. CivLR 3.2; *Andrews*, 398 F.3d at 1119. These statements show Plaintiff carried a $99.75 average monthly balance and had $47.50 in average monthly deposits to his account. (*See* ECF No. 3 at 1.) Thus, the Court GRANTS Plaintiff's Motion to Proceed IFP (ECF No. 2) and assesses his initial partial filing fee to be $19.95 pursuant to 28 U.S.C. § 1915(b)(1).

However, because Plaintiff also had an available balance of only $.05 on the books at the time of filing, the Court will direct the Acting Secretary of the CDCR, or his designee, to collect the initial $19.95 fee only if sufficient funds are available in Plaintiff's account at the time this Order is executed. *See* ECF No. 3 at 1, 3; 28 U.S.C. § 1915(b)(4) (providing that "[i]n no event shall a prisoner be prohibited from bringing a civil action or appealing a civil action or criminal judgment for the reason that the prisoner has no assets and no means by which to pay the initial partial filing fee."); *Bruce*, 136 S. Ct. at 630; *Taylor*, 281 F.3d at 850 (finding that 28 U.S.C. § 1915(b)(4) acts as a "safety-valve" preventing dismissal of a prisoner's IFP case based solely on a "failure to pay ... due to the lack of funds available to him when payment is ordered."). The remaining balance of the $350 total fee owed in this case must be collected by the agency having custody of the prisoner and forwarded to the Clerk of the Court pursuant to 28 U.S.C. § 1915(b)(2).

**II.   Screening Pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)**

A.   <u>Standard of Review</u>

Because Plaintiff is a prisoner and is proceeding IFP, his Complaint also requires a pre-answer screening pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A(b). Under these statutes, the Court must sua sponte dismiss a prisoner's IFP complaint, or any portion of it, which is frivolous, malicious, fails to state a claim, or seeks damages from defendants who are immune. *See Lopez v. Smith*, 203 F.3d 1122, 1126-27 (9th Cir. 2000) (en banc)

(discussing 28 U.S.C. § 1915(e)(2)); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010) (discussing 28 U.S.C. § 1915A(b)). "The purpose of [screening] is 'to ensure that the targets of frivolous or malicious suits need not bear the expense of responding.'" *Nordstrom v. Ryan*, 762 F.3d 903, 920 n.1 (9th Cir. 2014) (quoting *Wheeler v. Wexford Health Sources, Inc.*, 689 F.3d 680, 681 (7th Cir. 2012)).

"The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012); *see also Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (noting that screening pursuant to § 1915A "incorporates the familiar standard applied in the context of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)"). Rule 12(b)(6) requires a complaint "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted); *Wilhelm*, 680 F.3d at 1121.

Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief [is] ... a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* The "mere possibility of misconduct" or "unadorned, the defendant-unlawfully-harmed me accusation[s]" fall short of meeting this plausibility standard. *Id.*; *see also Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009).

B. <u>Plaintiff's Allegations</u>

Plaintiff claims to be permanently disabled, requires a wheelchair, and is a participant in the CDCR's Mental Health Services Delivery System at the "enhanced outpatient (EOP) level of care." (*See* Compl., ECF No. 1 at 4.) On May 7, 2018, Plaintiff claims RJD Correctional Officer Uhde "became enraged" and confronted him during breakfast after discovering Plaintiff had two food trays. (*Id.* at 4-5.) Plaintiff claims Uhde threw both trays in the trash, and after Plaintiff threatened to "write [Uhde] up," he became

"hostile," "grabbed Plaintiff by the arm," "forcefully pull[ed] [him] from [his] wheelchair," "slammed [him] on the floor," and "handcuffed [him] without provocation or resistance." (*Id.*) Plaintiff contends Correctional Officers Cervantes and Jansen "watched without any form of aid to Plaintiff or intervention." (*Id.*)

Plaintiff then claims Officers Herrera and Cervantes returned him to his wheelchair, and Herrera pushed him to the gym where "in isolation" he "pulled the front of Plaintiff's shirt up and over [his] face and head and began punching [him] repeatedly in the face and head." (*Id.* at 5-6.) Plaintiff again fell from his wheelchair and Herrera continued to kick him in the stomach, side, and torso with his boots while yelling, "You p[i]ece of shit." (*Id.* at 6.)

Plaintiff claims to have suffered pain, bruising, cuts, and swelling as a "direct result of the[se] malicious acts," but claims Correctional Lieutenant Aguirre, Sergeant Gonzalez and Officers Uhde, Herrera, Cervantes, and Jansen "each conspired to file false peace officer reports charging [him] with assault against … Uhde." (*Id.*) In fact, Plaintiff claims Aguire and Gonzalez "maintain[] an ongoing practice of allowing subordinates, including Herrera to use the facility gym as an arena to beat, torture, and abuse prisoners … in solitude," and then "manufacture false reports" in order to "conceal the[ir] wanton act[s]." (*Id.* at 6-7.)

Finally, Plaintiff claims Warden Paramo personally interviewed him during an Institutional Classification Committee hearing held on May 19, 2018, "as a result of [his] … place[ment] in Administrative Segregation (Ad-Seg) on [the] false assault charges." *Id.* at 7. Plaintiff contends Paramo "saw [his] bruised face" and torso, and asked him what happened. *Id.* Plaintiff claims he told Paramo that Uhde "slammed [him] to the floor for informing of [his] intent to file a 602 appeal." *Id.* Plaintiff claims Paramo said he'd "take care of the 602," and ordered a video recording of Plaintiff's injuries, but otherwise "turned a blind eye to a prison guard gang of subordinate defendants['] ongoing pattern[s] [and] practice." (*Id.* at 8.)

///

Based on these allegations, the Court finds Plaintiff's Complaint contains "sufficient factual matter, accepted as true," to state First and Eighth Amendment claims for relief that are "plausible on its face," *Iqbal,* 556 U.S. at 678, and therefore, sufficient to survive the "low threshold" set for sua sponte screening as required by 28 U.S.C. §§ 1915(e)(2) and 1915A(b). *See Wilhelm*, 680 F.3d at 1123; *Iqbal*, 556 U.S. at 678; *Hudson v. McMillian*, 503 U.S. 1, 5, (1992) (unnecessary and wanton infliction of pain violates the Cruel and Unusual Punishments Clause of the Eighth Amendment); *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (per curiam) (for claims arising out of the use of excessive physical force, the issue is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.") (citing *Hudson*, 503 U.S. at 7); *Robins v. Meecham*, 60 F.3d 1436, 1442 (9th Cir. 1995) ("[A] prison official can violate a prisoner's Eighth Amendment rights by failing to intervene."); *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005) ("Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal.").

Therefore, the Court will direct the U.S. Marshal to effect service of the summons and Plaintiff's Complaint on his behalf.[2] *See* 28 U.S.C. § 1915(d) ("The officers of the court shall issue and serve all process, and perform all duties in [IFP] cases."); Fed. R. Civ. P. 4(c)(3) ("[T]he court may order that service be made by a United States marshal or deputy marshal ... if the plaintiff is authorized to proceed in forma pauperis under 28 U.S.C. § 1915.").

///

---

[2] Plaintiff is cautioned that "the sua sponte screening and dismissal procedure is cumulative of, and not a substitute for, any subsequent Rule 12(b)(6) motion that [a defendant] may choose to bring." *Teahan v. Wilhelm*, 481 F. Supp. 2d 1115, 1119 (S.D. Cal. 2007).

## III. Conclusion and Order

For the reasons explained, the Court:

1. **GRANTS** Plaintiff's Motion to Proceed IFP pursuant to 28 U.S.C. § 1915(a) (ECF No. 2).

2. **ORDERS** the Acting Secretary of the CDCR, or his designee, to collect from Plaintiff's trust account the $19.95 initial filing fee assessed, *if those funds are available at the time this Order is executed*, and to forward whatever balance remains of the full $350 owed in monthly payments in an amount equal to twenty percent (20%) of the preceding month's income to the Clerk of the Court each time the amount in Plaintiff's account exceeds $10 pursuant to 28 U.S.C. § 1915(b)(2). ALL PAYMENTS MUST BE CLEARLY IDENTIFIED BY THE NAME AND NUMBER ASSIGNED TO THIS ACTION.

3. **DIRECTS** the Clerk of the Court to serve a copy of this Order on Ralph Diaz, Acting Secretary, CDCR, P.O. Box 942883, Sacramento, California, 94283-0001.

4. **DIRECTS** the Clerk to issue a summons as to Plaintiff's Complaint (ECF No. 1) and forward it to Plaintiff along with a blank U.S. Marshal Form 285 for each named Defendant. In addition, the Clerk will provide Plaintiff with a certified copy of this Order, certified copies of his Complaint, and the summons so that he may serve the Defendants. Upon receipt of this "IFP Package," Plaintiff must complete the USM Form 285s as completely and accurately as possible, *include an address where each named Defendant may be found and/or subject to service* pursuant to S.D. Cal. CivLR 4.1c., and return them to the United States Marshal according to the instructions the Clerk provides in the letter accompanying his IFP Package.

5. **ORDERS** the U.S. Marshal to serve a copy of the Complaint and summons upon the Defendants as directed by Plaintiff on the USM Form 285s provided to him. All costs of that service will be advanced by the United States. *See* 28 U.S.C. § 1915(d); Fed. R. Civ. P. 4(c)(3).

6. **ORDERS** Defendants, once they have been served, to reply to Plaintiff's Complaint within the time provided by the applicable provisions of Federal Rule of Civil

Procedure 12(a). *See* 42 U.S.C. § 1997e(g)(2) (while Defendants may occasionally be permitted to "waive the right to reply to any action brought by a prisoner confined in any jail, prison, or other correctional facility under section 1983," once the Court has conducted its sua sponte screening pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A(b), and thus, has made a preliminary determination based on the face on the pleading alone that Plaintiff has a "reasonable opportunity to prevail on the merits," the Defendants are required to respond).

7. **ORDERS** Plaintiff, after service has been effected by the U.S. Marshal, to serve upon Defendants, or if appearance has been entered by counsel, upon Defendants' counsel, a copy of every further pleading, motion, or other document submitted for the Court's consideration pursuant to Fed. R. Civ. P. 5(b). Plaintiff must include with every original document he seeks to file with the Clerk of the Court, a certificate stating the manner in which a true and correct copy of that document has been was served on Defendants or their counsel, and the date of that service. *See* S.D. Cal. CivLR 5.2. Any document received by the Court which has not been properly filed with the Clerk or which fails to include a Certificate of Service upon the Defendants, or their counsel, may be disregarded.

**IT IS SO ORDERED**.

Dated: November 30, 2018

Hon. Gonzalo P. Curiel
United States District Judge